(5 Misc. Rep. 448.)

SINSHEIMER v. UNITED GARMENT WORKERS OF AMERICA et al.

(Supreme Court, Special Term, New York County. November 10, 1893.)

INJUNCTION—INDUCING WITHDRAWAL OF CUSTOM.

A trade union, against whose members plaintiff discriminates in employing labor, will be enjoined from sending circulars to plaintiff's customers, threatening that in case they continued to deal with plaintiff other trade unions would be notified, and that the members of such other unions would thus be induced to withhold their business from persons dealing with plaintiff, as such circulars are injurious to plaintiff's business, and the damages are not ascertainable.

Action by Leopold Sinsheimer against the United Garment Workers of America, a voluntary association and others. Plaintiff moves for an injunction. Granted.

Edgar M. Johnson and John Vernou Bouvier, Jr., for plaintiff. Fromme Bros., for defendants.

INGRAHAM, J.   The defendant the United Garment Workers of America is alleged by the complaint to be a voluntary association, composed of more than seven members, and this action is brought for an injunction against such voluntary association and the individual defendants, as constituting its officers and general executive board, restraining it and them from distributing circulars to the customers of the plaintiff, which circulars have injured, and will continue seriously to injure, the plaintiff's business.   The dispute between plaintiff and this voluntary association appears to have been caused by the fact that the plaintiff has discriminated against the members of this voluntary association in the employment of labor necessary to carry on his business.   It does not appear that either of the defendants were actually in the employ of the plaintiff, but some, if not all, of the plaintiff's employes were members of the voluntary association that is made a defendant in this action. While this dispute continued, the defendants sent circulars to the plaintiff's customers, which were clearly intended as a threat to such customers that, in case such customers continued to do business with the plaintiff, the defendants would notify other trade unions of that fact, and thus induce the members of such other trade unions to withhold their business from any firms that continued to sell the plaintiff's goods, and the evidence shows that, in consequence of such circulars, purchases of goods from plaintiff were canceled by his customers, and statements were made by other customers that, unless plaintiff settled his dispute with the defendants, future business would be discontinued.   It clearly appears that sending such circulars to plaintiff's customers would cause serious injury to plaintiff's business, each letter sent by defendants causing additional injury that would continue until the notice contained therein was withdrawn.   The serious question that is presented at the threshold of this case is whether a court of equity has jurisdiction to restrain the issuance of such circulars.   The right to this relief does not depend upon the truth or falsity of the statement contained in the circulars issued.   It is not because the circular states facts which are untrue that the court is asked to interfere.   It is placed upon the broad ground that the defendants have conspired to injure the plaintiff's property by illegal acts, that such injury is a continual injury, and that it is impossible to estimate the damages that will result therefrom.   We have thus a continual injury by the wrongful acts of others, where it is clearly impracticable to ascertain the damage flowing from each wrongful act.

It has been settled in this state, in the case of People v. Barondess, (N. Y. App.) 31 N. E. Rep. 240, that a threat to do an injury to the business of the person threatened is a threat to injure the property of such person, and that the statements of an officer of such an association as the present defendants that, unless a copartnership paid him a sum of money, they (the employers) could not have their

employes back to work again, was a threat to do an unlawful injury to the employers' business. In that case the threat consisted in the fact that the employes would not return to work until the defendants' demand was complied with. In this case the plaintiff's customers were told that if they continued to deal with the plaintiff, and to sell the plaintiff goods, so long as plaintiff refused to comply with defendants' demands, the defendants would take steps to interfere with the successful conduct of the plaintiff's customers' business. Applying the principle established in the Barondess Case to the facts here stated, it is clear that it was an unlawful injury to plaintiff's property to send circulars to their customers, which would tend to induce such customers to discontinue business with the plaintiff.

The question, then, is presented whether it is the duty of a court of equity to interfere by injunction to restrain the defendants from continuing thus unlawfully to injure the plaintiff's property, and that question, I think, must be answered in the affirmative. From a very early period courts of equity have in all cases of continued trespass or continuing injury to property, where defendants were doing a series of acts which were unlawfully injuring the plaintiff's property, and where, to enforce a remedy for such unlawful acts at law, many suits would be required, interfered by injunction to restrain the continuance of such unlawful acts, and I know of no principle that confines the duty of the court to act where the unlawful acts cause an injury to real property. Trespass, in its broad sense, is "any misfeasance or act of one man whereby another is injuriously treated or damnified; any unlawful act committed with violence, actual or implied, to the person, property, or rights of another." 2 Bouv. Law Dict. 747. And while the cases in which this remedy has been usually invoked have been those relating to trespass upon real property, the necessity for the interposition of a court of equity to prevent a wrong for which there is no other remedy, and to render unnecessary a multiplicity of actions, exists just as much where the wrong is to such personal property as is in its nature indefinite, as to real property. Courts of equity have constantly interfered to restrain acts which are invasions of franchises granted by the state, and other instances could be adduced in which courts of equity have frequently interposed to prevent threatened injury to personal property. I have carefully considered the opinion of Mr. Justice Barrett in refusing to continue an injunction in a former action; but the question I have discussed was not presented to him, and was not determined on the decision of that motion. The defendants also insist that upon the affidavits there is no evidence to show that there is any intention to continue to issue the circulars complained of, but that all disputes between the plaintiff and defendants have been amicably adjusted. The defendants, however, did issue the circulars complained of. They did cause an injury to plaintiff, and they are now here before the court insisting upon their right to issue such circulars in the future, and denying the right of the court to enjoin them from such acts; and, as I have come to the con-

clusion that such acts were unlawful injuries to plaintiff's property, I think the plaintiff is entitled to an injunction. The motion will therefore be granted, order to be settled on notice.