THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* PATRICK J. COMMERFORD and Another, Respondents.

First Department, June 24, 1931.

*John C. McDermott* of counsel [*Thomas C. T. Crain, District Attorney*], for the appellant.

*James E. Smith,* for the respondents.

MERRELL, J. The Penal Law which the defendants are charged in the indictment with violating provides as follows:

" § 580. Definition and punishment of conspiracy. If two or more persons conspire: * * *

" 5. To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use or employment thereof; * * *

" Each of them is guilty of a misdemeanor."

The defendants obtained access to the minutes of the grand jury which indicted them and upon the said minutes of the grand jury moved the Court of General Sessions of the County of New York for an order dismissing the said indictment upon the ground that the charge of conspiracy against said defendants was without evidence to support it. The judge of the Court of General Sessions who heard said motion of the defendants held that the evidence before the grand jury upon which the indictment was found was insufficient to justify such indictment, and that said evidence did not show any criminality that would warrant a conviction of the defendants, and granted their motion to dismiss said indictment. In our opinion the evidence presented to the grand jury fully justified the indictment of the defendants. Section 258 of the Code of Criminal Procedure provides that " The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." An examination of the evidence upon which the grand jury indicted the defendants, printed in the record on appeal herein, unexplained and uncontradicted, leaves no doubt in our minds as to the guilt of the defendants of the crime charged.

It clearly appears from the evidence before the grand jury that the Standard Arch Company was engaged in doing the concrete work in erecting a building at the southwest corner of Eighty-sixth street and Amsterdam avenue, New York city. On December 1, 1930, said company was under a valid contract with a corporation known as Manhattan and Bronx Cinder Supply Co., Inc., whereby the last-mentioned corporation was to furnish cinders to the

Standard Arch Company necessary for concrete work being performed by the Standard Arch Company on said building. The Standard Arch Company employed, in connection with the performance of its contract, a hoisting engineer by the name of Keller, who was a member of the International Union of Operating Engineers. Deliveries of cinders by the Manhattan and Bronx Cinder Supply Co., Inc., to the Standard Arch Company were made at the building from November 1, 1930, and continued until December 3, 1930, at which time, the evidence discloses, the said hoisting engineer, Keller, was taken from the job and all work thereon, by reason of the absence of said hoisting engineer, was suspended. The evidence clearly shows that said hoisting engineer was taken from the job and all work brought to a standstill upon orders given by defendants, both of whom were delegate engineers of the Stationary Engineers Union. Keller was taken from the job upon the professed excuse on the part of defendants that cinders had been delivered at the job by the Manhattan and Bronx Cinder Supply Co., Inc., who employed non-union truck drivers to make such deliveries. The evidence shows that the real reason for stopping the work in which the Standard Arch Company was engaged was that said company did not obtain its cinders from a competitor of said Manhattan and Bronx Cinder Supply Co., Inc., to wit, the Empire Carting Company and one Freed connected therewith. When the work upon the building came to a standstill and the president of the Standard Arch Company investigated the cause of the removal of the hoisting engineer, he discovered that the defendants, as delegate engineers of the Stationary Engineers Union, had withdrawn the hoisting engineer, and when the president of the Standard Arch Company remonstrated with defendants, he was informed that the reason for Keller's removal was because of the employment of non-union labor in making deliveries of cinders. As a matter of fact, the Manhattan and Bronx Cinder Supply Co., Inc., had none but union labor in its employ. Nevertheless, the defendants refused to permit the work to continue unless the Empire Company and Freed were given contracts by the Standard Arch Company. Finally, when the Standard Arch Company acceded to the demands of defendants and entered into contracts whereby the Empire Company was to receive a part of its patronage, the defendants permitted the return of the hoisting engineer to the job and the work progressed.

The evidence before the grand jury clearly shows that the defendants conspired together to prevent the exercise of a lawful trade. The defendants were guilty of a violation of the statute in question. (*Grassi Contracting Co.* v. *Bennett*, 174 App. Div. 244; *Davis* v.

*Zimmerman*, 91 Hun, 489; *People* v. *Davis*, 159 App. Div. 464.) The question of criminal intent on the part of defendants was a question of fact for the jury. Upon the evidence, unexplained and undenied, the grand jury was justified in finding that the defendants were actuated by a criminal intent. The defendants conspired together to injure and oppress the Standard Arch Company in its lawful calling and business. In our opinion the Court of General Sessions erred in dismissing the indictment.

The order appealed from should be reversed, the motion denied, and the indictment of the defendants reinstated.

FINCH, P. J., McAvoy, MARTIN and SHERMAN, JJ., concur.

Order reversed and motion denied, and the indictment of defendants reinstated.