### DE NEUFVILLE v. NEW YORK & N. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. May 26, 1897.)

**1.** EQUITY JURISDICTION—CORPORATIONS—STOCKHOLDER'S BILL—CONSPIRACY.
Complainant, a stockholder in the N. Ry. Co., alleged in his bill that a conspiracy had been formed between that company and the C. Ry. Co. to force the N. Co. into insolvency, and bring about its sale under foreclosure of a mortgage, and its purchase by the C. Co.; that in pursuance of such conspiracy the officers of the C. Co., while in control of the N. Co., after the C. Co. had acquired a majority of its stock, declined to accept traffic from other roads which would have produced a fund to pay the

interest on its mortgage, and diverted its income from the payment of such interest to improper purposes. *Held*, that the bill stated a case for relief in equity. Farmers' Loan & Trust Co. v. New York & N. Ry. Co., 44 N. E. 1043, 150 N. Y. 410, followed.

**2. EQUITY PLEADING—MULTIFARIOUSNESS.**

A bill will not be dismissed as multifarious because the complainant, in addition to praying for the relief appropriate to the only cause of action supported by the facts pleaded in the bill, has also asked for other relief to which he is not entitled.

**3. SAME—CORPORATIONS—STOCKHOLDER'S BILL—DIVERSION OF FUNDS.**

A bill by a stockholder in a corporation, which sets out facts showing an improper diversion of the funds of such corporation, entitling it to sue for the protection of its rights, or, in default of action by the directors, entitling a stockholder to sue, will not be treated as a bill in the complainant's own right, though he uses language in the bill implying that he regards the wrong as a misappropriation of his own property.

**4. SAME—WRONGFUL ACTS OF CORPORATE DIRECTORS.**

When it is averred in a bill by a stockholder on behalf of a corporation that the board of directors has been elected in pursuance of the wrongful design on the part of the majority stockholder of which complaint is made, it is not necessary, under the ninety-fourth equity rule, to set forth with particularity efforts to secure action by such directors to right the wrong complained of.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the circuit court, Southern district of New York, sustaining a demurrer to complainant's bill.

Simon Sterne, for appellant.

Charles F. Brown and Thos. Thacher, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The action was brought by the appellant, as the holder of 275 shares of the preferred stock of the New York & Northern Railway Company, in behalf of himself and all other stockholders similarly situated; and the alleged cause of action arises out of the purchase by the New York Central & Hudson River Railroad Company of a majority of the second mortgage bonds and stock of the said Northern Railway Company, and the subsequent foreclosure of the mortgage securing such bonds. It is averred, with great detail, that the purchase was made and foreclosure effected in pursuance of a conspiracy between the defendants whereby the said New York & Northern Railway Company was to be forced into insolvency, and its property sold out, ostensibly in satisfaction of its bonded indebtedness, but really in the interest of the New York Central & Hudson road, which acquired title to the property upon foreclosure through a new corporation created by it solely for the purpose of taking such property and leasing it to the Central & Hudson. The same issues were raised in the state court upon the intervention of stockholders of the New York & Northern Railway Company other than complainant. It will be unnecessary to set forth in detail the facts averred in the complaint. A sufficient statement of them will be found in the decision of the New York court of appeals in the state court case. Farmers' Loan & Trust Co. v. New York & N. Ry. Co., 150 N. Y. 410, 44 N. E. 1043.

The judge who heard this demurrer in the circuit court followed the decisions which had been then rendered by the supreme court at special and general term, and held that there was no equity in the bill. Upon appeal to the court of appeals in the state court case, it was held that the supreme court erred "in rejecting, as immaterial, evidence offered by the appellants to show that after the New York Central & Hudson River Railroad Company became the owner of a majority of the stock and bonds of the New York & Northern Railway Company, and while its officers were in control of the latter corporation and its affairs, it declined to accept traffic from other roads which would have produced a fund with which to pay the interest that was due; that the income of the road which should have been employed to pay such interest was used for other and improper purposes; and that such action upon the part of the majority stockholder occasioned the inability of the company to pay the interest and cure the default." The bill in this case contains these specific averments, and for the purposes of this appeal they must be taken as true. We concur with the New York court of appeals that such conduct on the part of the majority stockholder is improper, and that, when it is proved, equity will afford relief. The bill, therefore, is not obnoxious to the objection that it does not set forth facts entitling the complainant to relief in equity.

It is next objected that the bill is multifarious. The facts pleaded make out a case where the New York & Northern Railway Company, through alleged improper and fraudulent conduct on the part of defendants, has been stripped of its property. The bill sets forth a cause of action in favor of the New York & Northern Railway Company, which might be prosecuted either by it, or, if its directors failed to do their duty in that regard, then by one or more of its stockholders whose interest it is to have the corporation vindicate its rights. The pleader, it is true, uses language which seems to imply that he considers this a cause of action in favor of the complainant individually. The brief, too, speaks of the "confiscation of his [complainant's] property," asks that "there be restored to him the property which he had lost," and asserts that he is bringing the suit purely on his own behalf, and not attempting to assert a right of the corporation. But manifestly this is a mistaken conception of the case made by the bill. The property covered by the mortgage, affected by the foreclosure, and which has passed to the new company, is not, and never was, complainant's property. The acts of the conspirators of which he complains have not deprived him of any of his property. It is the property of the corporation which has been taken, and it is the corporation which is entitled to its return, or to an accounting for its proceeds. When the corporation succeeds, complainant's share of stock will be worth more; and to that extent he has an interest in the result, which the courts have recognized to the extent of allowing a dissatisfied stockholder, upon a sufficient showing of unsuccessful efforts to induce action by the officers of the corporation, himself to bring the cause of action before the court for consideration. But, in whatever form or under

whatever name it is presented, it is the cause of action of the corporation, and of the corporation alone. The real controversy is between the corporation, whose officers refuse to assert its rights, and the alleged conspirators, who have deprived it of its property. If the wholesome rule approved by the supreme court in numerous decisions were followed, and the parties arranged, not as they stand in the title, but according to their interest in the controversy, we would have the New York & Northern Railway Company classified as a plaintiff, and the diversity of citizenship necessary to confer jurisdiction would no longer exist. If the circuit courts were entirely free to enforce the provisions of the fifth section of the act of 1875 to every case where it logically applies, they would, no doubt, be able to relieve their dockets, as was suggested in Hawes v. Oakland, 104 U. S. 450, of many cases which have no proper place there; but the decisions in Dodge v. Woolsey, 18 How. 331, Hawes v. Oakland, supra, and Quincy v. Steel, 120 U. S. 241, 7 Sup. Ct. 520, and the ninety-fourth rule in equity, seem to preclude a strict application, in cases such as the one at bar, of the rule that parties may be rearranged according to interest in the controversy. The cause of action in favor of the corporation to recover its property being the only one supported by the facts pleaded in the bill, or cognizable by the court, and relief appropriate thereto being prayed for, the bill will not be dismissed as multifarious because complainant has also asked for other relief to which he may not be entitled.

There is no force to the suggestion that the bill is defective in failing to "set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action." In view of the averments that defendants obtained control of a majority of the stock and bonds on purpose to wreck the New York & Northern; procured, by resignation and election, a board of directors in harmony with that purpose, and which board did in fact, by refusing profitable business and diverting traffic, accomplish such purpose,—it would be an idle waste of time to urge the board of directors, or the majority stockholders who initiated and consummated the fraud, to bring suit in order to secure judicial condemnation of their own actions.

It sufficiently appears from averments in the bill that the subject-matter of the suit, viz. the entire property of the New York & Northern, exceeds in value the jurisdictional sum of $2,000.

The only remaining ground of demurrer is that this court has no jurisdiction because the suit is "virtually to annul the foreclosure proceedings and judgment rendered in the state court." But Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, is abundant authority for the proposition that the court may "lay hold of parties" whose fraudulent acts have put them into possession of property under a decree of the state court, and "compel them to do what, according to the principles of equity, they ought to do." The decree of the circuit court is reversed, with costs.